UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFFORD CRYSLER,

        Petitioner,                                  Hon. Gordon J. Quist

v.                                                            Case No. 1:12-CV-1142

BONITA HOFFNER,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Crysler's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Crysler's petition be **denied**.

**BACKGROUND**

As a result of events which occurred on or about October 31, 2010, Petitioner was charged with (1) assault with the intent to commit murder and (2) assault with the intent to do great bodily harm less than murder. (Plea Transcript, April 27, 2011, 6). Petitioner was also charged with being an habitual felon. (Tr. 6). Petitioner later agreed to plead no contest to a third charge, attempted assault with the intent to do great bodily harm less than murder. (Tr. 5-7, 19-20). Plaintiff also agreed to plead no contest to being an habitual felon. (Tr. 5-7, 19-20). In return, the original

1

charges of (1) assault with the intent to commit murder and (2) assault with the intent to do great bodily harm less than murder were dismissed. (Tr. 5-7, 19-20). The parties also agreed that Petitioner's minimum prison sentence would be five years. (Tr. 5-7, 19-20). Petitioner was subsequently sentenced to serve 5-7½ years in prison. (Sentencing Transcript, May 23, 2011). Petitioner was also sentenced to make restitution to his victim in the amount of thirty thousand dollars ($30,000.00) to partially compensate him for "the significant medical costs [he] has had to incur." (Tr. 18).

Asserting the following claims, Petitioner moved in the Michigan Court of Appeals for leave to appeal:

> I. Defendant-Appellant was denied his right to a proportionate and individualized sentence under the federal and state constitutions when the trial court imposed a sentence of 60-90 months imprisonment for attempted assault with intent to commit great bodily harm less than murder - habitual offender, second offense as a result of an agreed-upon sentencing bargain.
>
> II. Defendant was denied the effective assistance of trial counsel under the state and federal constitutions when counsel's whole performance is scrutinized.[1]

The Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Crysler*, Case No. 307264, Order (Mich. Ct. App., Jan. 3, 2012). Asserting the same issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Crysler*, Case No. 144662, Order (Mich., June 25,

---

[1] Issue I was asserted by Petitioner's appellate counsel. Petitioner asserted issue II in a supplemental pleading. (Dkt. #13).

2012). Asserting the same two issues identified above, Petitioner initiated the present action on October 19, 2012.

## STANDARD OF REVIEW

Crysler's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state

court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard. *Id.*; *see also*, *Werth v. Bell*, 692 F.3d 486, 493-94 (6th Cir. 2012) (applying

5

*Harrington* and concluding that a summary denial of leave to appeal by a Michigan appellate court is an "adjudication on the merits" subject to AEDPA deference).

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.**        **Sentencing Claim**

Petitioner challenges the lawfulness of his sentence as disproportionate and insufficiently individualized. First, as is recognized, "the United States Supreme Court has refused to extend the doctrine of individualized sentencing to noncapital cases." *Hastings v. Yukins*, 194 F.Supp.2d 659, 673 (E.D. Mich. 2002) (citing *Harmelin v. Michigan*, 501 U.S. 957, 995-96 (1991)). Next, to the extent Petitioner asserts that his sentence violates the principle of proportionality articulated under Michigan law, such is without merit. Any claim that Petitioner's sentence violates state law is not cognizable in this action. *See, e.g., Lunsford v. Hofbauer*, 1995 WL 236677 at *2 (6th Cir., April 21, 1995) (citing *Harmelin*, 501 U.S. at 965) (recognizing that a claim that the sentencing court violated Michigan's principles of proportionality is not cognizable on federal habeas review).

Finally, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence." *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Layne*, 324 F.3d at 473. When a court assesses whether a sentence imposed by a state court satisfies the Eighth Amendment's "limited guarantee of proportionality," it must "grant substantial deference to the. . .legislatures. . .in determining the types and limits of punishments for crimes." *Id.* at 473-74. Accordingly, "a sentence within the maximum set by statute generally does not constitute cruel and unusual punishment." *Id.* at 474. In this case, Petitioner's sentence is not "grossly disproportionate" to the crimes of which he was convicted nor does his sentence exceed that allowed under Michigan law.[2]

The Michigan Court of Appeals rejected this claim. In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.        Ineffective Assistance of Counsel

Petitioner next asserts that he is entitled to habeas relief because he was denied the right to the effective assistance of trial counsel. Specifically, Petitioner faults his counsel for

---

[2] Under Michigan law then in effect, the possible sentence for an habitual felon convicted of attempted assault with the intent to do great bodily harm less than murder was up to 7½ years. *See* Mich. Comp. Laws §§ 750.84, 750.92, 769.10.

"repudiating" the plea agreement by stipulating to the imposition of financial restitution. Petitioner also faults his counsel for agreeing, as part of the plea deal, to a sentence in excess of that recommended by the offense scoring guidelines.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of

probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001). In the sentencing context, Petitioner must specifically demonstrate that "his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 Fed. Appx. 520, 525 (6th Cir., Nov. 14, 2007).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the *Premo* Court stated:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Before addressing Petitioner's specific arguments, it is necessary to put such into context by describing the punishment that Petitioner potentially faced in the absence of a plea agreement. As noted above, Petitioner was charged with assault with the intent to commit murder and assault with the intent to do great bodily harm less than murder. Petitioner was also charged with being an habitual felon. A conviction for assault with the intent to commit murder was punishable by imprisonment "for life or any number of years." Mich. Comp. Laws § 750.83 (2010). A conviction for assault with the intent to do great bodily harm less than murder was punishable, because Petitioner was an habitual felon, punishable by imprisonment for up to 15 years, a fine of

9

not more that $5,000, or both. Mich. Comp. Laws §§ 750.84, 769.10 (2010). On the other hand, by agreeing to the aforementioned plea agreement, Petitioner faced no more than 7½ years in prison. Mich. Comp. Laws §§ 750.92, 769.10 (2010).

In addition, Petitioner faced the prospect of restitution. Under Michigan law, excepting circumstances not presently applicable, "the court shall order. . .that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction." Mich. Comp. Laws § 780.766(2) (2010). This language has been interpreted by Michigan courts as mandating restitution. *See, e.g., People v. Bell*, 741 N.W.2d 57, 60 (Mich. Ct. App. 2007) ("[t]he use of the word 'shall' indicates that the directive to order restitution is mandatory, unless the exception applies"). As of Petitioner's sentencing, the amount in potential restitution, incurred in caring for Petitioner's victim following his assault by Petitioner, was determined to be at least $46,000. (Sentencing Transcript, May 23, 2011, 3-4).

### A. Restitution

Petitioner asserts that he agreed to plead no contest to the charges in question so as to "obviate any civil liabilities." Petitioner asserts that by agreeing to the imposition of financial restitution, his trial counsel "repudiated" or undermined one of the benefits he obtained in the plea agreement. Petitioner's argument conflates the perceived benefit of pleading no context, diminished civil liability, with the requirement under Michigan law that restitution be imposed. Petitioner would have been required to pay restitution regardless whether he pleaded guilty, pleaded no contest, or pleaded not guilty and was convicted at trial. Petitioner has identified no authority supporting his belief that by pleading no contest he was somehow immunized from the financial impact of his

criminal activity.

Petitioner further argues that the imposition of restitution in this matter was improper because "the State agreed to a specific sentence of only five years," thus precluding the imposition of any financial sanction. This argument, however, mischaracterizes an essential aspect of his plea deal. The prosecution did not agree that Petitioner's sentence would consist of nothing more than imprisonment or that any imprisonment not exceed five years. Instead, the parties simply agreed that Petitioner's minimum prison sentence would be five years. (Plea Transcript, April 27, 2011, 5-7, 19-20). This agreement did not preclude the imposition of other lawful punishment in addition to imprisonment. Likewise, this agreement did not prevent the imposition of a lawful prison sentence in excess of five years.

B.   Prison Sentence

As part of the plea agreement in this matter, the parties agreed that Petitioner's minimum sentence would be five years. Subsequent calculation of Petitioner's sentencing guidelines score, however, resulted in a recommended minimum sentence of 19-47 months. (Sentencing Transcript, May 23, 2011, 16-17). Nevertheless, the trial court adhered to the terms of the plea agreement, sentencing Petitioner to serve 5-7½ years in prison.[3] Petitioner argues that his trial attorney rendered deficient performance by bargaining for a sentence that represented an upward departure from that recommended by the sentencing guidelines.

First, there is no evidence that Petitioner's guideline scored had been calculated prior

---

[3] The Court notes that the trial judge did not blindly adhere to the plea agreement, but instead articulated on the record why he was imposing a minimum sentence in excess of that recommended by the sentencing guidelines. (Tr. 16-18).

11

to the negotiation of Petitioner's plea agreement. There is likewise no evidence that the parties had even speculated at that juncture what Petitioner's recommended sentence might be under the guidelines. Thus, it is not accurate to assert that counsel consciously bargained to obtain for Petitioner a sentence that constituted an upward departure from the sentence recommended by the guidelines. Even if the Court assumes, however, that Petitioner's counsel knew or had reason to believe that the sentencing guidelines would have recommended a minimum sentence of less than five years, counsel's actions must be assessed in the appropriate context.

Petitioner was originally charged with assault with the intent to commit murder and assault with the intent to do great bodily harm less than murder. Conviction for these crimes could have resulted in sentences of life in prison and 15 years in prison, respectively. Counsel negotiated an agreement whereby these two charges were dropped in return for a no contest plea to a charge which carried with it a maximum sentence of 7½ years. Under these circumstances, it would not have been unreasonable for the prosecution to require Petitioner to agree to a lengthy, relative to what the sentencing guidelines might recommend, minimum sentence. Likewise, it would not have been unreasonable for Petitioner to agree to such considering the significant benefit he was otherwise receiving in return for his plea.

Simply put, Petitioner faced the possibility of life in prison as well as an obligation to make restitution in an amount of at least $46,000. Through the efforts of his trial counsel, Petitioner was sentenced to serve only 5-7½ years in prison and pay $30,000 in restitution. By any measure, this plea agreement benefitted Petitioner immensely. Petitioner's arguments that his counsel rendered ineffective assistance are simply unpersuasive. Petitioner has failed to demonstrate that his attorney's performance was deficient. Petitioner has likewise failed to demonstrate that he

suffered any prejudice as a result of his attorney's allegedly deficient performance.

The Michigan Court of Appeals rejected this claim. In light of the aforementioned authority and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Crysler's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 14, 2015

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge